## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| STATE OF MINNESOTA, by its Attorney General Keith Ellison,<br><br>    Plaintiff,<br><br>    v.<br><br>EVAN AZURE, in his official capacity as CEO of Island Mountain Development Group, and<br><br>WILLIAM BELL, in his official capacity as Chairman of Island Mountain Development Group.<br><br>    Defendants. | CASE NO. 23-cv-003321 (PJS/DJF)<br><br>SETTLEMENT AGREEMENT |

    THIS SETTLEMENT AGREEMENT ("Agreement") is made by and between the State of Minnesota, by its Attorney General Keith Ellison ("the Attorney General"); and Evan Azure, in his official capacity as CEO of Island Mountain Development Group, and William Bell, in his official capacity as Chairman of Island Mountain Development Group (collectively, "the Tribal Officials") each of which is separately referred to herein as a "Party" and collectively as "the Parties."

## RECITALS

    A.    The Attorney General filed a Complaint on October 30, 2023, for a permanent injunction and declaratory relief in this action pursuant to the Consumer Financial Protection Act, 12 U.S.C. ch 53, the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. ch. 96, Minnesota's Anti-Usury Law, Minn. Stat. ch. 334, the Minnesota Regulated Loan Act, Minn. Stat. ch. 56, the Minnesota Short-Term Loan Statute, Minn. Stat. § 46.601, the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. §§ 325F.69-.70, the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §§ 325D.44-45, and the Minnesota False Statement in Advertising Act, Minn. Stat. § 325F.67 (the "Litigation").

    B.    The Tribal Officials filed a motion to dismiss on December 26, 2023; the Attorney General filed a motion for preliminary injunction on January 8, 2024; and briefing related to both motions concluded on February 2, 2024.

1

C.   The Attorney General's position as to the Tribal Officials' lending activities and violations of applicable federal and state law are set forth in the Complaint and briefing described above, which are incorporated by reference.

D.   The Tribal Officials have not yet filed an Answer but deny the allegations in the Complaint. The Tribal Officials deny that they conduct business in the state of Minnesota and deny that Minnesota state law applies to the lending activities conducted by Aaniiih Nakoda Finance LLC dba Bright Lending, Green Trust Cash LLC dba Green Trust Lending, and Target Finance LLC dba Target Cash Now (collectively "Tribal Lending Entities") but for purposes of this Agreement voluntarily agree to comply with Minnesota law as expressly set forth herein.

E.   In the interest of resolving this litigation between two sovereigns, the parties have agreed to this Agreement to achieve settlement and compromise of all claims between the Parties in the Litigation.

## **TERMS**

1.   The Tribal Officials, in all cases herein acting in their official capacity on behalf of Island Mountain Development Group, a wholly owned and operated arm of the Fort Belknap Indian Community, agree to cease engaging in the business of marketing, advertising, and making loans from the Tribal Lending Entities—or any other entity owned or operated by the Island Mountain Group or the Fort Belknap Indian Community—to consumers that identify themselves as a Minnesota resident during the loan application process and complete the loan transaction while physically located in Minnesota. The Tribal Lending Entities (or any other lending business operated by the Tribal Officials) shall state on their websites and all other marketing or advertising related to their lending business that their loans are not available to consumers located in Minnesota. This paragraph shall not apply if the Tribal Officials agree to comply with Minnesota law as provided in paragraph 2 below. To ensure compliance with this paragraph, the Tribal Officials shall continue to require borrowers to identify their address and state of residency when they complete a loan application.

2.   Alternative to paragraph 1, the Tribal Lending Entities (or any other lending business operated by the Tribal Officials) may engage in the business of making loans to consumers located in Minnesota if they agree to comply with Minnesota consumer-lending laws concerning such loans, including Minn. Stat. ch. 334, Minn. Stat. ch. 56, and Minn. Stat. §§ 47.60 and 47.601. The Tribal Officials will provide the Attorney General with notice 120 days before recommencing the business of making loans to consumers located in Minnesota under this paragraph.

3.   For any loans originated to consumers located in Minnesota by the Tribal Lending Entities prior to the date of this Agreement, the Tribal Lending Entities shall

modify such loans to prevent and avoid the charging or collection of any interest charged or accrued after origination of the loan. Defendants shall be enjoined from demanding or collecting payments on such loans except to recover the original principal balance of the loan and all past and future payments must be applied towards the original principal balance. Within 45 days of this Agreement's Effective Date, the Tribal Officials shall certify compliance with this paragraph to the Attorney General's undersigned counsel by providing the Attorney General a sortable spreadsheet identifying all loans subject to this paragraph and including at least the following information: (a) the borrower's full name, last-known address, phone number, and email address and (b) the loan's original principal balance, original interest rate, the loan's status, and total amount collected up to the date that the spreadsheet is produced. The Attorney General may request additional information that is reasonable and necessary to certify compliance with this paragraph. Information or data exchanged pursuant to this paragraph shall be treated confidentially and not public under the Minnesota Government Data Practices Act, *see* Minn. Stat. § 13.393.

4. Tribal Officials agree that they shall not sell, assign, transfer, or otherwise dispose of any loans subject to paragraph 3 or receivables or other interests related to such loans.

5. This Agreement is binding on the Tribal Officials in their official capacity, all successors in their official capacity, and their officers, agents, servants, employees, attorneys, and all other persons who are in active concert or participation with them who receive actual notice of this Agreement. Persons subject to this Agreement shall not change the corporate form of doing business, organizational identity, organization structure, or management composition of the Island Mountain Development Group and its managed corporations as a method or means of attempting to avoid the requirements of this Agreement.

6. This Order may be amended by stipulation or for good cause shown.

7. Within 30 days of this Agreement's Effective Date, Defendants shall provide actual notice of this Agreement to all owners, contractors, investors, managers, directors, officers, agents, servants, employees, and attorneys of the IMDG.

8. To monitor and confirm compliance with this Agreement, the Tribal Officials agree to comply with the Attorney General's reasonable requests for information.

9. This Agreement shall not be considered an admission of a violation or wrongdoing by the Tribal Officials for any purpose. The terms of this Agreement are made entirely for the purpose of a compromise and settlement of a bona fide dispute. Nothing in this Agreement shall be construed to create any rights or interests in third persons or entities. The fact of this settlement may not be used by any Party to prove or establish liability in any other action or proceeding of any kind whatsoever.

10. As consideration of the foregoing agreements by the Tribal Officials, the Attorney General releases the Tribal Officials of any and all civil claims arising from the allegations in the Complaint in the Litigation. The Attorney General does not release any private claims or remedies under Minn. Stat. § 8.31, subd. 3a.

11. This Agreement shall not be deemed approval by the Attorney General of any business practice. The Tribal Officials shall not state or imply that the Attorney General or any other governmental unit of Minnesota has approved or authorized any practice or conduct of the Tribal Officials by reason of this Agreement.

12. Any failure by a party to this Agreement to insist upon strict performance by the other party of any provision shall not be deemed a waiver of any such provision. Any party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any provision.

13. This Agreement represents the full and complete terms of the Parties' agreement to resolve this litigation.

14. The Parties agree to cooperate and execute any additional documentation as shall reasonably be required to effectuate the provisions or purposes of this Agreement.

15. This Agreement, and any companion documents referenced or provided for herein, constitutes the entire agreement between the Parties pertaining to the settlement of disputes and obligations between them with respect to the subject matter of this Agreement.

16. Each Party to this Agreement will bear its own costs and fees incurred in the negotiation of this Agreement and in fulfilling its obligations hereunder.

17. The Tribal Officials agree that this Agreement may be enforced or modified by this Court, and the Tribal Officials waive any defenses that they may have to this Court's jurisdiction to enforce or modify the terms of this Agreement. The Parties may make application to the Court as appropriate to enforce or interpret the provisions of this Agreement or to resolve any disputes that arise under this Agreement.

18. The Tribal Officials understand and acknowledge that a violation of the terms of this Agreement may subject them to sanctions for contempt and that the Attorney General may, in his discretion, initiate legal proceedings against the Tribal Officials for any and all violations of this Agreement.

19. Notices or communications required by or related to this Agreement must be sent via certified mail or emailed to the undersigned counsel or any person subsequently designated by a party to receive such notices.

20. This Agreement, including any issues related to its interpretation and enforcement, shall be governed by the laws of Minnesota.

21. This Agreement may be executed in counterparts all of which taken together shall constitute one agreement, and may be executed by facsimile or electronic copy in any image format. This Agreement is effective when executed by all Parties to the Agreement and the below Order is executed by the Court.

WHEREFORE, the Parties hereby acknowledge their Agreement and consent to the terms and conditions set forth above through their respective signatures as set forth below.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the dates set forth below.

**TRIBAL OFFICIALS**

Evan Azure CEO                    Dated: 2/20/24
*/s/ EA/*

William Bell, Chaiman              Dated: 2/20/24
*/s/ Wm Bell/*

For Plaintiff:                     KEITH ELLISON
                                   Attorney General

                                   JASON PLEGGENKUHLE
                                   Assistant Attorney General

Dated: Feb. 21, 2024               *s/ Adam Welle*
                                   _____
                                   ADAM WELLE
                                   Assistant Attorney General
                                   MN Atty. Reg. No. 0389951
                                   adam.welle@ag.state.mn.us

                                   445 Minnesota Street, Suite 1200
                                   St. Paul, Minnesota 55101-2130
                                   (651) 757-1425